That Cr. No. 80/46 shall be continued until July 14, 1980, at which time it will come on for trial.

**ALL STAR CORPORATION, Plaintiff**

v.

**GOVERNMENT OF THE VIRGIN ISLANDS, Defendant**

Civil No. 79/161

District Court of the Virgin Islands

Div. of St. Croix

June 13, 1980

ROBERT ZIMMERMAN, ESQ., Christiansted, St. Croix, V.I., *for plaintiff*

WILLIAM C. MURRAY, ESQ., Assistant Attorney General (Office of the Attorney General), Christiansted, St. Croix, V.I., *for defendant*

BROTMAN, *Judge By Special Assignment*

## MEMORANDUM OPINION WITH ORDER ATTACHED

This is an action for breach of a contract for the purchase of real property allegedly entered into between plaintiff and the Government of the Virgin Islands. It came before the Court for trial on June 5, 1980. Having received and considered the evidence and

having heard the arguments of counsel, the Court will enter judgment for defendant.

## I. FACTUAL BACKGROUND AND FINDINGS OF FACT

Much of the factual background of this case was summarized in an earlier opinion of the Court dated February 8, 1980, reported at 1980 St. Croix Supp. 16. These preliminary facts need not be reviewed here. It suffices to say that the issue to be resolved in this proceeding is whether the written offer to purchase certain real property which was transmitted to plaintiff by the Commissioner of Property and Procurement was made with the express authority of the Governor of the Virgin Islands. If the Commissioner was not so authorized, the offer was void ab initio under the provisions of 31 V.I.C. § 249(a).[1]

The history of this transaction dates from the early months of the administration of the current Governor. Being aware that the Legislature had authorized the expenditure of $500,000 in bond revenues for the purpose of providing additional public parking facilities in Christiansted, St. Croix,[2] the Governor initiated procedures to explore the possibility of the purchase of plaintiff's property.[3] The Governor notified plaintiff of his intention to acquire the subject property by letter dated June 2, 1978.[4]

As directed by the Governor, the Commissioner of Property and Procurement arranged for the appraisal of the subject property as required by 31 V.I.C. § 231a.[5] The final appraisal report was

---

[1] This section states, in relevant part:
    (a) Any purchase order or contract executed in violation of this chapter and of the rules and regulations promulgated for its enforcement, shall be null and ineffective . . . .

[2] Governor Luis' deposition p. 19. The history of the authorizing legislation is set forth at length in the Court's earlier opinion.

[3] The Governor, of course, delegated the responsibility for gathering all of the necessary information. From the record it appears that the principal officials involved in the discussions regarding the proposed purchase were the Commissioner of Property and Procurement and the Director of Planning.

[4] It should be noted that this letter was sent prior to receipt by the government of any appraisal reports and before the responsible officials had gathered sufficient information with which to determine the best means of proceeding with the purchase. It can only be concluded that the purpose of this letter was to notify plaintiff of the government's interest in acquiring the property and the Governor's present intention of further exploring the feasibility of the purchase.

[5] This provision of the Code governs the acquisition of real property by the government by process other than condemnation. Although the statute is relatively straightforward and unambiguous, there seems to have been an inordinate amount of confusion within the government as to the proper

completed on November 30, 1978. The average of the three appraisals received set the market value of the subject property at $582,184.93. This was significantly in excess of the amount authorized for the project.

Following the receipt of the final appraisal report there occurred various communications between the responsible government officials concerning the feasibility of going forward with the purchase of the subject property. The degree to which the Governor was involved in these discussions is unclear. It is apparent, however, that the responsible subordinate officials were progressing with the preliminary stages of the proposed acquisition.[6]

On May 8, 1979, the Commissioner of Property and Procurement requested specific guidance from the Director of Planning regarding the availability of funds in addition to the $500,000 in bond revenues with which to purchase the subject property.[7] On May 18, 1979, the Director of Planning, in response to this request, recommended that if an offer to purchase was to be made that it should be at the authorized amount rather than at the appraised value.[8]

By letter dated May 22, 1979, the Commissioner of Property and Procurement made a "formal offer" to purchase the subject property.[9] This offer was accepted in accordance with its terms.

On or before June 19, 1979, the Governor learned of the offer and acceptance. By memorandum dated June 19, 1979, he notified various of his subordinates that he did not believe that the purchase of the property at the offered price was in the best interests of the

procedures for negotiating the purchase of this property. An explanation of the statutory procedure is set forth in the Court's earlier opinion.

[6] In his testimony the Governor was able to recall few specific details of the various conversations he had with subordinates regarding this matter. This is entirely understandable in view of the wide range of responsibilities of the Chief Executive.

[7] See plaintiff's Exhibit 6. The Commissioner apparently believed the government was somehow bound by the average of the three appraised values. Under 31 V.I.C. § 231a(c) this average value operates only as an upper limit on the amount which may be first offered by the Governor. In negotiating for the purchase the Governor may offer any amount which he feels to be appropriate so long as he does not exceed this figure.

[8] See plaintiff's Exhibit 7. This letter was advisory only. There is no evidence that the Director of Planning had any power to order that an offer be made at any price. There is, of course, evidence that the Director discussed this matter with the Governor prior to drafting this letter. The most which can be derived from this evidence, however, is that the Governor was then unwilling to expend more than $500,000 for the entire parking project—as he envisioned it.

[9] See defendant's Exhibit D.

government.[10] This action effectively halted further government efforts to acquire this property.

The evidence presented by both sides tends to show that the Commissioner of Property and Procurement was acting without the Governor's authority in making the offer to purchase.[11] Indeed, the Commissioner admits to having made the "offer" believing that it was nothing more than an informal inquiry as to plaintiff's willingness to negotiate a purchase at the offered price.[12] This is corroborated by the Governor's testimony to the effect that he believed that the transaction was merely at the discussion stage at the time that the Commissioner made the offer.[13] There is no evidence from which one can conclude that the Governor ever communicated to the Commissioner his authorization to make a binding offer to purchase.[14]

## II. CONCLUSION OF LAW

Because the Commissioner of Property and Procurement acted beyond the scope of his authority in making the offer to purchase of May 22, 1979, such offer was void ab initio pursuant to 31 V.I.C. § 249(a).

## ORDER

For the reasons set forth in the memorandum opinion of even date, it is hereby

---

[10] See defendant's Exhibit E.

[11] As to this central issue, the depositions of the Governor and the Commissioner are of particular relevance. The Commissioner admits to having been confused with regard both to his role in the transaction and with respect to the source of project funds. This can only be explained by the Commissioner's inexperience in purchases of this type. See Sprauve deposition pages 8, 9, 15, 39, 47 and 48.

[12] Sprauve deposition p. 39.

[13] Governor Luis' deposition p. 9.

[14] In its proposed findings of fact plaintiff contends that the Governor authorized the offer in a conversation with the Director of Planning on May 17, 1979. The Court fails to see how this could have the legal effect of authorizing the Commissioner of Property and Procurement to extend such an offer in view of the fact that there is no evidence showing that such unequivocal authority was ever communicated to the Commissioner himself. Plaintiff has failed to advance any other theory whereby express authority was extended to the Commissioner. The Court, therefore, must conclude that the Commissioner acted unilaterally in making the offer. Because the Court finds as fact that the Commissioner had not been given authority to make the offer, it need not decide at this time the form such authorization must take in order to be effective. As a practical matter, however, persons doing business with the government in similar transactions would be well advised to demand unequivocal written authority before commencing negotiations with a subordinate official.

ORDERED THAT:

(1) Judgment be, and is hereby, entered in favor of defendant; and

(2) Each side is to bear its own costs.